# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HYBIR, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> VEEAM SOFTWARE CORPORATION, <br><br> *Defendant*. | Case No: 1:20-cv-10329-IT |

**DEFENDANT VEEAM SOFTWARE CORPORATION'S [PROPOSED] REPLY
IN SUPPORT OF ITS AMENDED MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................. 1

II.   The Claims of the Patents-in-Suit are Directed to Patent-Ineligible Subject Matter. .......... 2

      A.   The Claims are Directed to the Abstract Idea of Using Shorthand
           Descriptors to Manage Inventory. ............................................................................ 2

      B.   The Patents-in-Suit Lack an Inventive Concept Sufficient to Transform
           the Ineligible Abstract Idea into a Patent-Eligible Invention. ................................ 7

      C.   The Representative Claims Are Sufficient for the § 101 Analysis. ........................ 8

III.  No Factual Dispute Prevents Dismissal On The Pleadings. ............................................... 9

IV.   Conclusion ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                        **Page(s)**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ............................................................................................ 3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ............................................................................................................ 6, 7, 8, 9

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ............................................................................................ 2

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .......................................................................................... 10

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019) ........................................................................................ 6

*CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) ............................................................................................ 4

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .............................................................................................. 6

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. May 12, 2016) ............................................................................. 4

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) ............................................................................................ 3

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ............................................................................................................. 6, 9

*McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ....................................................................................... 3, 4

*PersonalWeb Techs. LLC v. Google LLC*, No. 5:13-cv-01317-EJD, 2020 WL 520618 (N.D. Cal. Jan. 31, 2020) ................................ 7

*Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364 (Fed. Cir. 2017) ...................................................................................... 3, 10

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016) ............................................................................................ 6

*In re TLI Comm's LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) .............................................................................................. 3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................................................................7

**Statutes**

35 U.S.C § 101 ............................................................................................................ *passim*

**I.      INTRODUCTION**

As Veeam demonstrated in its opening brief (D.I. 36, "Op. Br."), each of the asserted claims of the patents-in-suit is directed to the abstract idea of generating and using shorthand "descriptors" to perform the standard, routine function of comparing items (here, electronic data or files) to avoid duplication and more efficiently manage inventory.  In its opposition (D.I. 39, "Hybir Br."), Hybir failed to demonstrate how or why its claims are patent-eligible – instead focusing on issues of which have little or no bearing on the § 101 analysis.  But Hybir's arguments are a red herring, and Hybir cannot save its patents without pointing to any specific details in the *claims* of the patents-in-suit.  Indeed, Hybir fails to explain why the use of "descriptors" in every independent claim at issue is not abstract.  Nor does it point to any inventive concept in the claims.  And, by Hybir's own admission, the limitations in the patents' dependent claims do nothing more than recite trivial pre- or post-solution activity.

Hybir's remaining arguments are likewise unavailing.  Hybir simultaneously argues that Veeam's characterization of the claims is too broad, and that Veeam failed to establish that the independent claims are representative.  Hybir is wrong on both counts.  Moreover, in a last-ditch effort to save its claims, Hybir attempts to argue that unidentified issues of fact preclude a decision at this stage of the case.  Yet Hybir points to no clear factual issues nor *any* disputed claim terms that should delay the inevitable finding of invalidity until after discovery.

Each and every claim of the patents-in-suit is directed to the same abstract idea, and each and every claim fails to provide any inventive concept.  As such, all the claims of the patents-in-suit are ineligible for patent protection under 35 U.S.C § 101.  Veeam's motion should be granted, the patents-in-suit should be held invalid, and the Complaint should be dismissed.

## II.   The Claims of the Patents-in-Suit are Directed to Patent-Ineligible Subject Matter.

### A.   The Claims are Directed to the Abstract Idea of Using Shorthand Descriptors to Manage Inventory.

As detailed in Veeam's opening brief, the claims of the patents-in-suit are all drawn to the abstract idea of using shorthand descriptors to manage inventory.  (*See* Op. Br. at 9-14.) Hybir argues that this clearly abstract idea "misses the claim language by a wide margin." (Hybir Br. at 10-11).  But Hybir's argument misses the mark, and the cases it cites are inapposite.  Indeed, the claims at issue are entirely analogous to those that have been found to fail the §101 standard.  For example, Hybir incorrectly attempts to distinguish relevant cases on the grounds that they "fail to explain the improvement in computer technology." (Hybir Br. at 17-18) (citing *In re TLI Comm's LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) and *PersonalWeb Techs. LLC v. Google LLC*, No. 5:13-cv-01317-EJD, 2020 WL 520618 (N.D. Cal. Jan. 31, 2020)).  Yet, as here, the problem in those cases was not the patentee's failure to *explain*, but rather their failure to *claim* improvements in computer technology.

As in those cases, Hybir's claims cannot survive because they merely recite computerizing a *manual* process of creating shorthand descriptors to organize and manage large quantities of information.  No matter how they are phrased, each of Hybir's claims does nothing more than recite well-understood, routine, and abstract ideas of (1) using shorthand descriptors to eliminate the storage of duplicate files (the '043 patent); (2) synchronizing files across computers on a network (the '146 patent); or (3) managing storage of electronic files on backup servers (the '545 patent).  As routinely sanctioned by the Federal Circuit, these summaries merely "[s]trip[] [the claims] of excess verbiage" to "determine whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Apple, Inc. v. Ameranth,*

*Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (quoting *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016).

Notably, Hybir does not meaningfully dispute Veeam's arguments that all the claims rely on the abstract concept of using "descriptors" to manage inventories of electronic files. (*See* Hybir Br. at 14-15 (summarizing claim 1 of each of the patents-in-suit)). Nor does Hybir dispute that the claims fail to recite anything innovative about how those descriptors are generated, which merely require "[t]he application of [a] descriptor algorithm"—which could be any of the many pre-existing algorithms known long before the filing of the patents-in-suit—"[to] create[ ] a unique descriptor of each file." '043 Pat., at 8:23-24; 10:10-21. Indeed, the Federal Circuit has held that hash descriptors are merely conventional computer components. *Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1374 (Fed. Cir. 2017). Importantly, Hybir does not dispute that these "common short-hand representative[s]" (the claimed descriptors) are used to do nothing more than to compare files across different inventories to determine whether the file already exists in a given inventory, or whether a particular user has rights to access that file. '043 Pat., at 10:24-27, 11:16-48, 13:23-37; *see also* Hybir Br. at 14-15. This series of steps – the entirety of the patent claims – describes the very hallmark of an unpatentable abstract idea. *See TLI Comm's*, 823 F.3d at 614.

Unable to meaningfully find fault in Veeam's summaries of the claims, Hybir instead points to easily-distinguishable cases in which challenged claims were drawn to computer-implemented improvements to a technical field. (*See* Hybir Br. at 10-11). For example, in *McRO*, the claims were drawn to a process for lip-synchronized three-dimensional animations.

837 F.3d at 1313. While the patent generally claimed rules for a computer creating animations that had previously been performed by human animators, *see id*. at 1307-08, the method was "focused on a ***specific*** asserted ***improvement in computer animation***, i.e., the automatic use of rules of a particular type." *Id*. at 1314 (emphasis added). It was "the incorporation of the claimed rules, not the use of the computer, that 'improved the existing technological process' by allowing the automation of further tasks." *Id*. (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014)).  Thus, *McRO* was unlike cases like this one, "where the claimed computer-automated process and the prior method were carried out in the same way." *Id*. (citing, *inter alia*, *Alice*, 573 U.S. at 219 and *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).  Likewise, the claims in *CardioNet* met the § 101 threshold because they were directed to a "***specific means or method*** that improves [***cardiac monitoring***] ***technology***," *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (emphasis added).  And *Enfish*, is also inapposite – there, the claims at issue were directed to an improvement to computer functionality itself, not merely implementing a pre-digital abstract idea on a computer.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. May 12, 2016).

Hybir is also incorrect in contending that Veeam's "library analogy [ ] is inapt and distorted" and that "[a] library card catalog system lacks many features of the Asserted Patents' claims." (Hybir Br. at 12).  Indeed, contrary to Hybir's assertions, such systems *do* generate indices of items in inventory using unique descriptors based on information contained in the books themselves, *e.g.*, the author's name, book title, publication date, classification number, and often a short description of the content.  Indeed, these descriptors were written on ***index*** cards.  Second, when a new book is added to the library's collection—even if it is an updated volume of an older book already in inventory—a new unique descriptor is generated for that new book or

volume to distinguish it from other books or earlier versions of the same book.  And, third, the unique descriptors are used to identify the location of the book and thus provide access to a user. In short, Hybir's attempt to distance the abstract idea encompassed by the claims of the patents-in-suit from the real-world analogy of library card catalogues is simply wrong.

Hybir's own characterization of the claims confirms this outcome.  Notably, Hybir consistently describes the claims in the context of data management, a quintessential library function that far predates the digital context.  For example, Hybir asserts that the claims:

> (1) "describe technological solutions that provide the ability to back up and restore files of a computer using source-side data identification and global data deduplication technologies," (Hybir Br. at 3),
>
> (2) "describe improved methods of data management, specifically for data backup and restoration processes, that maximize storage utilization, decrease bandwidth requirements, and control access to data for file systems, computer data backup, and computers in general," (*id.* at 10-11) or
>
> (3) "recite a system that reduces the amount of data transmitted from the communication device to a backup server, culminating in only original data stored in a backup storage system"

(id. at 20).  Each of, these features have pre-digital analogues in a basic library as facilitated by a card catalog, such as (1) allowing a person to find a copy of a lost book in a library or off-site storage location (i.e. "restore from backup"), (2) donate books to a library to clear off home shelf space ("maximize storage utilization"), or (3) use a library as a single point of access to books ("decrease bandwidth requirements").  Whatever purported "improvements" the claims provide merely flow from implementing these abstract ideas in a generic computing environment.  And, in any event, Hybir's characterizations of its alleged inventions are nothing more than self-serving statements completely unmoored from any language in the claims.

Indeed, substituting Hybir's own descriptions results in the same inevitable conclusion of patent ineligibility.  For instance, Hybir uses complicated terms such as "source-side data identification" and "global deduplication technologies" in an effort to allege that the asserted

claims describe "technological solutions that provide the ability to back up and restore files of a computer." (Hybir Br. at 3.) But the language quoted by Hybir is nothing more than a complicated way of saying that the patents claim the use of shorthand descriptors ("data identification") to avoid sending duplicate items to storage ("global deduplication technologies"). Thus, Hybir's characterizations are essentially identical to Veeam's and lead inexorably to a finding of ineligiblity under § 101.

Hybir's attempt to find *some* specificity in the claims to satisfy § 101 is futile. Hybir initially lists seven purported "solutions" described in the patents-in-suit, all of which are *outcomes*, not a specific means for achieving them. (Hybir Br. at 3-4.) And, all of which are *outcomes*, not a specific means for achieving them, and all of which include the abstract concept of descriptors. (Hybir Br. at 3-4.) Hybir also cherry picks these purported "solutions" from various passages in the patents' common specification – never once tying any particular "solution" to any claim language. As a result, Hybir's analysis is entirely contrary to step one of the *Alice / Mayo* test which "must focus on the language of the Asserted Claims themselves," not the specification. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). *See also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (embodiments in specification cannot establish patentability "if those details are not claimed").

Hybir's remaining arguments also fail. Claiming, without support, that the patents are valid based on descriptions of "improved" data deduplication methods or "unconventional" methods for determining whether to back up or restore electronic data, is insufficient. (*See* Hybir Br. at 13.) The Court need not accept as true such unfounded, inaccurate legal conclusions. *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019). Nor *could* any alleged novelty save the claims; "purported technological innovations" are "relevant to

a novelty and obviousness analysis, and not whether the claims [are] directed to eligible subject matter," because "[e]ligibility and novelty are separate inquiries." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017).

### B. The Patents-in-Suit Lack an Inventive Concept Sufficient to Transform the Ineligible Abstract Idea into a Patent-Eligible Invention

The second step in the *Alice / Mayo* test requires the Court to "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal quotation marks omitted). Hybir fails to rebut Veeam's showing that the claims of the patents-in-suit lack such a concept. (*See* Op. Br. at 16-18.) Indeed, as established in Veeam's opening brief, the claims are implemented on generic computer technology and do not otherwise contain any inventive concept.

Hybir admits in its responsive brief that the claims do nothing more than "recite a system that reduces the amount of data transmitted from the communication device to a backup server, culminating in only original data being stored in the backup system." (Hybir Br. at 20.) In other words, the entire crux of the patents-in-suit, according to Hybir, is to "eliminat[e] duplicate copies" of electronic files by using generic shorthand descriptors. But this is a routine function of inventory management—not the type of inventive concept necessary to carry a claim past the § 101 threshold. *See PersonalWeb*, 2020 WL 520618 at *13 (finding no inventive concepts in "well-known and conventional functions of computers and data management systems").

Throughout the scant two pages of its *Alice* step two analysis, Hybir points to nothing but its own self-serving statements that the claims "improve computer functionality" as conferring patent eligibility. (Hybir Br. at 19-21). But "[t]o save a patent at step two, an ***inventive concept*** must be evident in the claims." *Two-Way Media*, 874 F.3d at 1338 (emphasis added). Hybir

identifies no particular limitations *in the claims themselves* which purport to improve computer functionality, nor any basis to circumvent the inevitable conclusion that it seeks a monopoly on *all* efficient electronic file management. (*See* Op. Br. at 17-18). As such, the patents-in-suit fail under step two of the *Alice / Mayo* test.

### C. The Representative Claims Are Sufficient for the § 101 Analysis.

Hybir contends that Veeam has "failed to establish a representative claim" (Hybir Br. at 5)—an unavailing argument that relies on a single case from the District of Delaware, and ignores the later-decided Federal Circuit precedent cited in Veeam's opening brief. (*See* Op. Br. at 18-19). Notably, Hybir does not dispute that each of the patents, which share a common specification, is drawn to the same abstract concept of using "descriptors" or "cryptographic signatures" to identify and compare electronic files stored across separate computers or backup systems. (*See* Hybir Br. at 14-15). That each of the patents-in-suit describe this abstract concept in different contexts does not alter the fact that the abstract concept contained in the claims is patent ineligible subject matter. *Alice*, 573 U.S. at 222 (quoting *Bilski*, 561 U.S. at 610-611) ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment.").

Moreover, although Hybir complains about Veeam's use of representative claims, it fails to meaningfully identify any subject matter in any other claims which could result in a different outcome for the patentability analysis. Indeed, Hybir focuses its argument on the same claims as Veeam – claim 1 of each patent-in-suit. (*See* Hybir Br. at 14-15). Hybir expends only a single paragraph attempting to differentiate claims 15 and 35[1] of the '043 patent on the basis that they

---

[1] Hybir's initial infringement contentions, served July 13, 2020, do not allege infringement of claim 35 of the '043 patent.

are "directed to physical devices and are therefore not abstract." (Hybir Br. at 18 But as a matter of law, the "mere recitation of a generic computer" does not constitute an "inventive concept." *Alice*, 573 U.S. at 223. Because claims 15 and 35 of the '043 patent merely implement the abstract methods of the independent claims on a generic "device for managing an electronic data backup system," they too are ineligible under § 101.

Similarly, Hybir contends that various dependent claims of the patents-in-suit:

- "describe a scenario where descriptors from the communication device do not substantially match"; or
- "relate[] to a method having two different users storing electronic data"; or
- "disclose additional limitations"; or
- "describe further limitations, such as the first and second communication device are associated with a common user."

(Hybir Br. at 6-8). But these limitations merely recite either "conventional or obvious pre-solution activity" or "insignificant post-solution activity," neither of which can circumvent "the prohibition against patenting abstract ideas." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012). As just one example, Hybir cannot salvage the claims by pointing to a dependent limitation describing what happens when "descriptors . . . do not substantially match" in light of the independent claim that describes what happens when they *do*. Thus, contrary to Hybir's contentions, none of these limitations amount to an inventive concept sufficient to save any asserted claim from patent-ineligibility.

### III.  No Factual Dispute Prevents Dismissal On The Pleadings.

Finally, despite failing to clearly identify a disputed factual issue, or to identify a single disputed claim construction, Hybir insists that such issues preclude judgment on the pleadings. Hybir Br. at 21. But "not every [Section] 101 determination contains genuine disputes over the underlying facts material to the [Section] 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360,

1368 (Fed. Cir. 2018). "Whether a claim recites patent eligible subject matter is a question of law which . . . has in many cases been resolved on motions to dismiss or summary judgment." *Id*.

Contrary to Hybir's contentions, the instant motion presents no factual dispute as to whether a claim element or combination of elements "is well-understood, routine and conventional to a skilled artisan in the relevant field." For instance, the shared specification of the patents-in-suit itself makes clear that the claimed "descriptors" or "cryptographic signatures" do not constitute any technological advancement, and merely incorporate routine means and well-known processes in the field of electronic data management. *See* '043 Pat., 10:10-21. Indeed, the Federal Circuit has held that hash descriptors, which are identical to the claimed cryptographic signatures, are merely conventional computer components. *Smart Systems Innovations*, 873 F.3d at 1374. As such, no factual disputes should prevent a decision on patent subject matter eligibility. [2]

Further, Hybir cannot reasonably argue that this issue must be delayed for claim construction when it failed to identify *even a single disputed claim term*. (*contra* Hybir Br. at 21). As such, there are no impediments to granting the present motion, and dismissing Hybir's complaint under 12(b)(6) based on the subject matter ineligibility of the patents-in-suit.

## IV. CONCLUSION

For the reasons discussed in Veeam's opening brief and above, each of the asserted patents claim subject matter that is not patent eligible under 35 U.S.C. § 101. Veeam respectfully requests that this Court enter an order finding each asserted patent invalid under 35 U.S.C. § 101 and dismissing the matter with prejudice in its entirety.

---

[2] Similarly irrelevant to the analysis before the Court are various patent prosecutions involving Hybir and Veeam unrelated to the patents-in-suit. (Hybir Br. at 15, 17.)

Dated: July 27, 2020                                  Respectfully submitted,


                *By:* */s/ Byron L. Pickard*
                Byron L. Pickard (admitted *pro hac vice*)
                Daniel S. Block (admitted *pro hac vice*)
                Robert E. Niemeier (admitted *pro hac vice*)
                STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
                1100 New York Avenue NW, Suite 600
                Washington, DC 20005
                (202) 371-2600
                bpickard@sternekessler.com
                dblock@sternekessler.com
                rniemeier@sternekessler.com

                *By:* */s/ Eric G. J. Kaviar*
                Eric G. J. Kaviar (BBO# 670833)
                Shepard Davidson (BBO# 557082)
                BURNS & LEVINSON LLP
                125 High Street
                Boston, MA 02110
                Tel: 617-345-3000
                Fax: 617-345-3299
                ekaviar@burnslev.com
                sdavidson@burnslev.com

                *Attorneys for Defendant*
                *Veeam Software Corp.*

## **CERTIFICATE OF SERVICE**

     I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                                               *By:*  */s/ Eric G. J. Kaviar*
                                                                      Eric G. J. Kaviar

4822-4923-4629.1