UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HYBIR, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10329-IT |
| | * | |
| VEEAM SOFTWARE CORPORATION, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

November 22, 2024

TALWANI, D.J.

Plaintiff Hybir, Inc. ("Hybir") alleges that products manufactured and distributed by Defendant Veeam Software Corporation ("Veeam") infringe on Hybir's patent, U.S. Patent Number 8,051,043 ("the '043 Patent"). Am. Compl. ¶ 23 [Doc. No. 71]. Veeam moves to dismiss the Amended Complaint, arguing that the '043 Patent is invalid under 35 U.S.C. § 101 as set out by Alice Corp. Pty. Ltd. v. CLS Bank Int'l., 573 U.S. 208 (2014), and its progeny, because the asserted claims are directed to an abstract idea and are patent ineligible. Mem. ISO Mot. to Dismiss [Doc. No. 77]. For the reasons that follow, Veeam's Motion to Dismiss [Doc. No. 76] is GRANTED.

I. **Background**

On November 1, 2011, the '043 Patent, titled "Group Based Complete and Incremental Computer File Backup System, Process and Apparatus," was issued by the U.S. Patent and Trademark Office. Am. Compl. ¶ 7 [Doc. No. 71]. The '043 Patent is assigned to and solely owned by Plaintiff Hybir. Id. ¶ 8.

Since 2014, Defendant Veeam has sold and offered the Veeam Backup & Replication backup solution (the "System"). Id. ¶ 18.

In December 2019, Hybir, via letter from its counsel, formally asserted to Veeam that products made, used, sold, and offered for sale by Veeam, including the System, infringed the '043 Patent. Id. ¶ 21. Hybir also accused Veeam of instructing users on the System's use in a manner that allegedly infringes the '043 Patent. Id. ¶ 22. Hybir alleges that since becoming aware of the '043 Patent at the latest in December 2019, Veeam has continued to develop, make, use, sell, and offer to sell the System to customers. Id. ¶ 29.

In February 2020, Hybir filed this action against Veeam claiming infringement of the '043 Patent and two other patents. Compl. [Doc. No. 1]. Veeam, in turn, challenged the validity of the three patents in two Inter Partes Review ("IPR") proceedings, IPR Nos. 2020-01037 and 2020-01038, before the Patent Trial and Appeal Board ("PTAB"). Am. Compl. ¶ 10. PTAB found unpatentable the claims of the other two patents and certain claims of the '043 Patent, including Claim 1, but upheld against an obviousness challenge claims 3, 4, 7, 16, 17, and 20. See Hybir, Inc. v. Veeam Software Corp., Nos. IPR2020-01037, IPR2020-01038 (PTAB); Hybir, Inc. v. Veeam Software Corp., Nos. IPR2020-01039, IPR2020-01040 (PTAB). The IPR decisions were affirmed by the Federal Circuit Court of Appeals on February 23, 2024. Hybir, Inc. v. Veeam Software Corp., 2024 WL 747928, at *1 (Fed. Cir. Feb. 23, 2024).

Hybir filed an Amended Complaint [Doc. No. 71] in this court on April 5, 2024. Hybir asserts that elements of claim 1, and claims 3, 4, 7, 16, 17, and 20, which depend on claim 1, are embodied in Veeam's system and that Veeam has infringed and continues to infringe the '043 Patent by making, using, selling, and/or offering to sell the System. Id. ¶¶ 24-25. Pursuant to 35 U.S.C. § 271(a), Hybir claims that Veeam is liable for direct infringement, contributory

2

infringement, and inducement of infringement, of at least claims 3, 4, 7, 16, 17, and 20 of the '043 Patent, for making and selling the System and instructing users to use the System in an infringing manner. Am. Compl. ¶¶ 25-27 [Doc. No. 71]. Hybir claims injury to its business and property from Veeam's alleged infringement. Accordingly, Hybir seeks relief in the form of damages and an injunction enjoining Veeam and all those in active concert or participation with Veeam from infringing the '043 Patent. Id. ¶ 36-37.

Veeam now moves to dismiss the Amended Complaint. Motion to Dismiss [Doc. No. 76].[1]

## II. Legal Standard

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

An inventor or discoverer may generally patent "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof…" 35 U.S.C. § 101. The Supreme Court has held that § 101 contains an "implicit exception," however, that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." Alice, 573 U.S. at 216 (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013)). Although "[a]t some level, all inventions… embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," these patent-ineligible exceptions prevent

---

[1] Veeam asserts in its motion that the '043 Patent as a whole is invalid, see Mot. to Dismiss 1 [Doc. No. 76], but the proper question before the court is whether the asserted claims of the '043 Patent are invalid, see Mem. ISO Mot. to Dismiss 1 [Doc. No. 77].

monopolization of the basic tools of science and technology and the "inhibit[ion of] further discovery by improperly tying up the future use of these building blocks of human ingenuity." Alice, 573 U.S. at 216 (internal quotations omitted) (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 71 (2012)). A patent is invalid if the subject matter of the patent is not patentable under 35 U.S.C. § 101. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1346 (Fed. Cir. 2014).

"[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing] them into a patent-eligible invention.'" Id. at 217 (quoting Mayo, 566 U.S. at 89). To do so, Alice prescribes a two-step analysis. First, under Alice step one, the court must determine whether the claims at issue, "considered in light of the specification," are as a whole "directed to an abstract idea." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1334-1335 (Fed. Cir. 2016). "The 'abstract ideas' category embodies 'the longstanding rule that [a]n idea of itself is not patentable.'" Alice, 573 U.S. at 218 (internal quotation marks omitted) (alteration in original) (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)). In Gottschalk, for example, the court rejected claims involving an algorithm that "convert[ed] [binary-coded decimal] numerals to pure binary" form because the claimed patent was "in practical effect . . . a patent on the algorithm itself." 409 U.S. at 71-72. Similarly, "other software-based claimed inventions . . . have failed to pass section 101 muster, because they did not recite any assertedly inventive technology for improving computers as tools and/or because the elements of the asserted invention were so result-based that they amounted to patenting the patent-ineligible concept itself." Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335, 1344 (Fed. Cir. 2018).

If the claims at issue are directed to an abstract idea, the court then evaluates, under Alice step two, "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Alice, 573 U.S. at 217 (quoting Mayo, 566 U.S. at 78-79). The Supreme Court has "described step two of this analysis as a search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (alteration in original) (quoting Mayo, 566 U.S. at 73). "Purely 'conventional or obvious' '[pre]-solution activity' is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." Mayo, 566 U.S. at 79 (internal citations omitted); see also Bilski v. Kappos, 561 U.S. 593, 610-11 (2010). To survive step two, the additional activity must "transform the claim into 'significantly more than a patent upon the' ineligible concept itself." Rapid Litig. Mgmt., Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016) (quoting Mayo, 566 U.S. at 73).

"Patent eligibility is a question of law that may involve underlying questions of fact." PersonalWeb Techs. LLC v. Google LLC, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (citing Simio, LLC v. FlexSim Software Prods., Inc., 983 F.3d 1353, 1358–59 (Fed. Cir. 2020)). But the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016). At the motion to dismiss stage, "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis" on a 12(b)(6) motion. AI Visualize, Inc. v. Nuance Comms., Inc., 97 F.4th 1371, 1379 (Fed. Cir. 2024). But "[c]onclusory allegations "or those 'wholly divorced' from the

5

claims or the specification… cannot defeat a motion to dismiss. See id. (quoting Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1317-18 (Fed. Cir. 2019)). The court "need not accept a patent owner's conclusory allegations of inventiveness," International Bus. Machs. Corp. v. Zillow Grp., Inc., 50 F4th 1371, 1379 (Fed. Cir. 2022), and need not accept representations of the patentee that are inconsistent with the patent. Athena Diagnostics, Inc. v. Mayo Collaborative Servs. LLC, 915 F.3d 743, 756 (Fed. Cir. 2019).

"In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." Genetic Techs., 818 F. 3d at 1374. It is the responsibility of the party invoking a need for claim construction or fact discovery to "propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." Trinity Info Media, LLC v. Covalent, Inc., 72 F.4th 1355, 1361 (Fed. Cir. 2023).[2]

### III. The Patent and the Claims at Issue

#### A. *Overview of the '043 Patent*

The '043 Patent purports to invent "a vastly more efficient method of [file] backup in terms of processing time, network bandwidth, and storage requirements.'043 Pat., Abstract [Doc. No. 71-1]. The Asserted Patent identifies inefficiencies in typical file storage management systems, such as authenticating and granting permission rights on a "per user basis," requiring "separate copies of files" to be "maintained for each user," id. col. 1, 26, 37-38, and "inefficiency… in the process of configuration management" based on "the inability of the system to guarantee the uniqueness of files," which results in file duplication, id. at 59-60, 66.

---

[2] Here, the parties have submitted claim construction briefing and agreed at oral argument that, to the extent the construction of any of the asserted claims is material to the instant motion, the court should use Plaintiff's proposed constructions.

The object of the patent is "to provide a more efficient method and system for managing files, file rights, and file identity." Id. col. 2, 12–14.

The asserted "technical solutions" to file management problems, as explained in the Patent specifications include a backup system which uses descriptors to uniquely identify data sets based on a data structure which includes file names, file data from each file, a descriptor generating algorithm, and a descriptor generated for the file data. Id. col. 9, 32-38. The descriptor generating algorithm "may comprise data related to a descriptor generating algorithm that is used to generate descriptors for various files" and is "applied uniformly to all files." Id. col. 9, 59-61, 63-64. The specifications explain that "communication devices, enterprise servers, and backup servers" should all "apply the descriptor generating algorithm uniformly such that a common file has the same descriptor associated with it, regardless of which endpoint generated the descriptor." Id. col. 9, 64-10:1. This descriptor allows the backup server to know when a particular file has already been stored and avoid duplicating that file. Id. col. 10, 1-5. The type of descriptor generating algorithm to be used is not specified by the Patent, which provides that "[e]xamples of a descriptor generating algorithm that may be used include, without limitation, an MD5 hash, SHA256, ssh256, crc-32, and any other hash generating algorithm known in the art." The algorithm "may be either [] cryptographic or non-cryptographic." Id. col. 10, 10-14.

The specifications then describe a "backup data structure" that "is typically maintained on the backup server as a reference to the identify of files and when those files were backed up on a per-user basis," meaning file "inventories" are maintained "for each user account." Id. col. 10, 64-67, col. 11, 1. This allows the backup system to personalize file restoration for particular users based on the algorithmically generated descriptors, which "are a short-hand representation

7

of the actual files, or portions of files, that have been recently backed up for the [particular] user's communication device." Id. col. 11, 11-15.

    *B.*    *The Claims*

Claim 1 claims:

> A method for managing an electronic data backup system, comprising:
>
> receiving, at a backup server,[3] a first inventory of electronic data[4] stored on a first remote storage medium,[5]
>
>> wherein the electronic data comprises actual file data to be backed-up from the first remote storage medium,
>>
>> wherein the first inventory comprises at least one descriptor and
>>
>> wherein the at least one descriptor comprises a cryptographic signature computed based on the actual file data, the cryptographic signature uniquely identifying the electronic data to be backed-up[6];
>
> comparing, at the backup server, the at least one descriptor of the first inventory to a list of descriptors associated with a second inventory of electronic data stored on a backup data storage medium,
>
>> wherein the second inventory of electronic data comprises shared electronic data from among a plurality of storage mediums including storage mediums different from the first remote storage medium and
>>
>> wherein the at least one descriptor of the first inventory is compared with descriptors in the second inventory that correspond, at least partially, to data stored on the backup data storage medium by storage mediums different from the first remote storage medium;

---

[3] Hybir's proposed construction of the term "a backup servicer" is "one or more computers adapted to provide or manage file backup system operations." Hybir's Opening Claim Construction Brief 12 [Doc. No. 91].

[4] Hybir states that the ordinary meaning applies to the term "receiving, at a backup server, a first inventory of electronic data." Hybir's Opening Claim Construction Brief 14 [Doc. No. 91].

[5] Hybir's proposed construction of the term "a first remote storage medium" is "one or more storage mediums remote from a backup storage medium." Hybir's Opening Claim Construction Brief 13 [Doc. No. 91].

[6] Hybir states that the ordinary meaning applies to the term "the cryptographic signature uniquely identifying the electronic data to be backed-up." Hybir's Opening Claim Construction Brief 18 [Doc. No. 91].

> determining that a first descriptor from the at least one descriptor of the first inventory substantially matches a second descriptor from the list of descriptors associated with the second inventory; and
>
> reporting, from the backup server, to the first remote storage medium that electronic data associated with the first descriptor is already stored in the backup data storage medium.[7]

Id. col. 18, 33-64 (with parenthetical footnotes providing Hybir's proposed claim construction).

Claims 3[8] and 4[9] claim methods taken to avoid file duplication where descriptors are determined to match descriptors stored on the backup server. Id. col. 19, 5-8. Claim 7[10] claims the method where a given device can only access files from the backup server that were previously stored on the device. Id. col. 19, 25-31.

---

[7] Hybir states that the ordinary meaning applies to the term "reporting, from the backup server, to the first remote storage medium that electronic data associated with the first descriptor is already stored in the backup data storage medium." Hybir's Opening Claim Construction Brief 16 [Doc. No. 91].

[8] Claim 3 reads: "The method of claim 1, further comprising removing the electronic data associated with the first descriptor from a list of electronic data that is to be transmitted to the backup data storage medium." '043 Patent col. 19, 5-8 [Doc. No. 71-1]. Hybir states that the ordinary meaning applies to the term "removing the electronic data associated with the first descriptor from a list of electronic data." Hybir's Opening Claim Construction Brief 14 [Doc. No. 91].

[9] Claim 4 reads: "The method of claim 3, further comprising transmitting electronic data from the first remote storage medium to the backup data storage medium, wherein the electronic data transmitted comprises electronic data associated with the first descriptor." Id. col. 19, 9-14.

[10] Claim 7 reads: "The method of claim 1, wherein a single copy of electronic data associated with the second descriptor is maintained on the backup data storage medium for use by a plurality of different data storage mediums and wherein access to the electronic data associated with the second descriptor is restricted to a data storage mediums that provide the first descriptor to the backup data storage medium." Id. col. 19, 25-31. Hybir states that the ordinary meaning applies to the terms "a single copy of electronic data associated with the second descriptor is maintained on the backup data storage medium for use by a plurality of different data storage mediums" and "access to the electronic data associated with the second descriptor is restricted to a data storage mediums that provide the first descriptor to the backup data storage medium." Hybir's Opening Claim Construction Brief 19, 21 [Doc. No. 91].

Claim 15[11] is drawn to a device, rather than a method, but otherwise mirrors claim 1. Claims 16[12] and 17[13] depend from claim 15 and recite a device that implements the electronic management method described in Claim 1 with the same limitations as Claims 3 and 4. Id. col. 20, 35-44. And Claim 20,[14] which also depends from claim 15, specifies the same access limitation as Claim 7. Id. col. 20, 55-61.

## IV. Discussion

### A. Alice Step One: Are the Asserted '046 Patent Claims Directed to an Abstract Idea?

Veeam contends that the asserted claims "do not recite any specific means of achieving efficiency beyond directing an abstract idea to that particular context" and that none of the claims

---

[11] Claim 15 reads: "A device for managing an electronic data backup system, comprising: a backup server including a backup application adapted to receive a first inventory of electronic data stored on a first remote storage medium, wherein the first inventory comprises at least one descriptor generated based on computing a cryptographic signature using actual file data of the electronic data as an input to a cryptographic signature function, compare the at least one descriptor of the first inventory to a list of descriptors associated with a second inventory of electronic data stored on a backup data storage medium, wherein the second inventory of electronic data comprises descriptors identifying electronic data stored by the backup server from a plurality of storage mediums different from the first remote storage medium, determine that a first descriptor from the at least one descriptor of the first inventory substantially matches a second descriptor from the list of descriptors associated with the second inventory, and report to the first remote storage medium that electronic data associated with the first descriptor is already stored in the backup data storage medium. Id. col. 20, 12-34.

[12] Claim 16 reads: "The device of claim 15, wherein the backup application is further adapted to remove the electronic data associated with the first descriptor from a list of electronic data that is to be transmitted to the backup data storage medium." Id. col. 20, 35-38.

[13] Claim 17 reads: "The device of claim 16, wherein the backup application is further adapted to transmit electronic data from the first remote storage medium to the backup data storage medium, wherein the electronic data transmitted comprises electronic data from the first inventory less the electronic data associated with the first descriptor." Id. col. 20, 39-44.

[14] Claim 20 reads: "The device of claim 15, wherein the first descriptor and the second descriptor were generated using a common descriptor generating algorithm and common inputs to the common descriptor generating algorithm, and wherein the common inputs comprise the actual file data of the electronic data associated with the first descriptor." Id. col. 20, 55-61.

10

"require a new or unconventional machine or process for identifying and comparing electronic files across a computer network." Mem. ISO Mot. to Dismiss 10-11 [Doc. No. 77]. Rather, Veeam argues, the claims "simply generate a list of descriptors for electronic files stored on one computer, compare that list of descriptors with a second list of descriptors stored elsewhere, and take some appropriate action after that comparison has been made." Id. at 11. These methods, according to Veeam, are "indistinguishable" from manual operations performed by individuals and so fail to provide a technologic solution. Id.

In PersonalWeb Techs., the Federal Circuit held that the claims relating to PersonalWeb's file management system were directed at an abstract idea. 8 F.4th 1315. There, the patents related to "data-processing systems that assign each data item a substantially unique name that depends on the item's content – a content-based identifier." Id. at 1312.[15] PersonalWeb argued that the claims were "directed to 'a substantially unique, algorithm-derived, content-based identifier for all data items in a networked computer.'" Id. at 1315. However, the Federal Circuit found that the use of a content-based identifier and the generation of such identifiers via known algorithms are abstract ideas. Id. at 1316-17. The claims did not improve the computers themselves; rather,

---

[15] The full descriptions of the patents in PersonalWeb:

The '310 patent explains a method and apparatus for creating a unique data-identifier for each file based on the content of the data item.

The '662 patent addresses the de-duplication of data in a data-processing system. The invention describes systems and methods for deleting a particular copy of a data item when at least one other copy of the copy of the data item is available. The presence of another copy of the data item is determined based on a content-dependent identifier for the data item.

The '280 patent addresses a method of identifying and requesting data in a network using content-based identifiers. Specifically, it covers a situation where data items are distributed across a network of servers and some of the data items are cached (stored) versions from a source server.

PersonalWeb Techs LLC v. Google LLC, 2020 WL 520618, at *2-4 (N. D. Cal. Jan. 31, 2020).

they focused on the "mere automation of manual processes using generic computers." Id. at 1318. The Federal Circuit drew a parallel between PersonalWeb's catalogue improvements and using content-based identifiers and an analog indexing system to "purge duplicate books" in a library. Id.

Following the Federal Circuit's decision in PersonalWeb, this court finds that Hybir has failed to show how the asserted claims are directed to more than just an abstract idea. As the Federal Circuit has held, the use of a content-based identifier and the generation of such identifiers with an algorithm are abstract ideas. See id. at 1317. The relevant claims of the '043 Patent's data-management function are similarly abstract and describe a manual process that was merely automated using generic computers. See id. (citing Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd., 955 F.3d 1317, 1327 (Fed Cir. 2020)).

Hybir argues that PersonalWeb is inapposite because, unlike PersonalWeb's asserted claims, the asserted claims of the '043 Patent are limited to the specific environment of backup systems. Opp. Mot. 13 [Doc. No. 79]. However, the court understands the environment of "computer data management" alleged in the Complaint, see Am. Compl. ¶ 11 [Doc. No. 71], to be just as abstract as the environment of "data processing systems" claimed in PersonalWeb, see 8 F.4th at 1312. The focus of Hybir's claims do not necessarily improve the computers themselves; rather, they suggest the automation of a manual process using generic computers. See id. at 1318. And though Hybir asserts efficiency improvements which reduce the bandwidth, processing time, and storage of backups and restores, these are still akin to using content-based identifiers to organize or deduplicate books in a library. See id.; Am. Compl. ¶ 14 [Doc. No. 71].

Hybir argues that the claims' character, when regarded as a whole, is non-abstract. Am. Compl. ¶ 14 [Doc. No. 71]. However, even when regarded as a whole, the asserted claims call

for using an abstract content-based identifier for an abstract data-management function, *i.e.*, data deduplication. See PersonalWeb, 8. F4th at 1317 (citing RecogniCorp v. Nintendo Co., Ltd., 855 F.3d 1322, 1327 (Fed. Cir. 2017)). Accordingly, the court finds that claims 3, 4, 7, 16, 17, and 20 of the '043 Patent are directed to an abstract idea under Alice Step One.

       B.      *Alice Step Two: Does the Inventiveness of the Claim Make it Patent Eligible?*

Veeam argues that the '043 Patent's claims are implemented using generic computer technology and fail to contain an inventive concept sufficient to confer patent-eligibility. Mem. ISO Mot. to Dismiss 17 [Doc. No. 77]. Veeam further contends that the use of "descriptors" and "cryptographic signatures" merely involves implementing an abstract idea using "generic, routine, and commonplace computer technology." Id. at 18.

"Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility." Alice, 573 U.S. at 217 (quoting Mayo, 566 U.S. at 72). For the second step, the courts must consider the claims individually and in combination. Id. Elements that either perform "basic computer functions" or "routine [] activities previously known to the industry" are not patent eligible. In re TLI Comm'ncs LLC Patent Litig., 823 F.3d 607, 614 (Fed. Cir. 2016) (holding that claims "simply directed to the abstract idea of classifying and storing digital images in an organized manner" were patent ineligible."). Moreover, using cryptographic hashes for data-management is not a patent-eligible concept, even if cryptographic hashes were not commonly used before the patents. PersonalWeb, 8 F.4th at 1318. "Merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." Id.; see Gottschalk, 409 U.S. at 64 (holding that claims were patent ineligible because they "were not limited to any particular art or technology, to any particular apparatus or machinery, or to any particular end use.").

Hybir contends that the asserted claims describe specific and tangible components which improve the use of computers as tools.[16] Opp. Mot. 14 [Doc. No. 79]. However, the components of Hybir's technology are not substantially unique. As described in the '043 Patent, the claimed methods "can be readily implemented in hardware and/or software using any known or later developed systems or structures, devices and/or software by those of ordinary skill in the applicable art." '043 Patent col. 18, 26 [Doc. No. 71-1]. Specifically, the communication network "may comprise any type of information transportation medium and may use any type of protocols to transport messages between endpoints." Id. col. 4, 51-53. Similarly, the communication devices can include "phones, IP phones, Personal Digital Assistants, Personal Computers, laptops…" Id. col. 5, 1-2. Here, the claims are not patent eligible because they are not limited to specific technologies or uses. See Gottschalk, 409 U.S. at 64.

The only potentially unique element of the '043 Patent is the backup application which combines the device backups, thereby reducing storage and network requirements. Am. Compl. Ex. A [Doc. No 71-1]. However, patenting the descriptor-generating process would be patenting the algorithm itself. See Gottschalk, 409 U.S. at 71–72 (rejecting claims involving an algorithm

---

[16] Hybir also argues that the PTAB and Federal Circuit decisions are evidence that the patents cover "inventive concepts." Opp. Mot. 2, 17 [Doc. No. 79]. This is not accurate. The Federal Circuit affirmed PTAB's decision that Hybir's expert demonstrated that claims 3, 4, 7, 16, 17, and 20 were distinct from another patent (U.S. Patent No. 2006/0212439). Hybir, Inc. v. Veeam Software Corp., 2024 WL 747928, at *1 (Fed. Cir. Feb. 23, 2024). But an Inter Partes Review is limited to "a determination that a patent is invalid (1) only on the ground of anticipation or obviousness and (2) only on the basis of prior art in the form of patents or printed publications." Singular Computing LLC v. Google LLC, 668 F.Supp.3d 64, 69 (D. Mass. 2023); see also 35 U.S.C. § 311; id. §§ 102, 103. The Federal Circuit has explained "that satisfying the requirements of novelty and non-obviousness does not imply eligibility under § 101, including under the second step of the Alice inquiry, because what may be novel and non-obvious may still be abstract." Adaptive Streaming Inc. v. Netflix, Inc., 836 Fed. Appx. 900, 904 (Fed. Cir. 2020) (citing Chamberlain Group, Inc. v. Techtronic Indus. Co., 935 F.3d 1341, 1348-49 (Fed. Cir. 2019)).

that "convert[ed] [binary-coded decimal] numerals into pure binary form," because the claimed patent was essentially a patent on the algorithm itself.).

Hybir asserts that, evaluated as a whole, its technology makes the backup and restore process more efficient by using a unique descriptor algorithm. See Am. Compl. Ex. A [Doc. No. 71-1]. However, the Federal Circuit in PersonalWeb held that using content-based identifiers for data-management was not a patent-eligible concept, even if these descriptors were not routinely used in the past. 8 F.4th at 1318. "Merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea." Id. Accordingly, where the asserted claims of the '043 Patent do nothing more, they fail Alice Step Two.

    C.    *No Factual Disputes*

Hybir asserts that resolution of its Complaint at the Motion to Dismiss stage is premature because "Hybir pled sufficient facts to show a genuine issue of fact regarding at least Step Two of the Alice test." Pl.'s Opp. 18. It is true that courts have denied motions to dismiss where questions of fact exist as to claim elements or combinations or there are genuine disputes about prior art. See, e.g., Aatrix Software, Inc. v. Green Shades Software, Inc., 890 F.3d 1354, 1356 (Fed. Cir. 2018). However, Hybir has not identified any specific question of fact or claim construction issue that martials against resolution of this case on the pleadings.[17] Hybir describes various sections of the '043 patent but does not explain how those assertions create a genuine dispute of material fact based on the asserted claims that cannot be resolved prior to claim

---

[17] Throughout its brief, Hybir relies on statements made by Veeam to the PTO while prosecuting a patent owned by Veeam. See Pl.'s Opp. 6, 9-10, 15 [Doc. No. 79]. Statements by Veeam regarding its own patents or products are irrelevant to the matter before the court, which is solely whether the '043 Patent, as reasonably construed by Hybir, satisfies the standard for patent eligibility described in Alice.

15

construction or discovery. Moreover, the court has reviewed the parties' claim construction briefs and finds no dispute that would preclude resolution of this case on the Motion to Dismiss.

## V.     Conclusion

For the foregoing reasons, Veeam's <u>Motion to Dismiss</u> [Doc. No. 76] is GRANTED.

IT IS SO ORDERED.

November 22, 2024                                         /s/Indira Talwani
                                                          United States District Judge